### Application of TRANSIT COMPANY OF DAYTONA BEACH.
No. 6874-CCB.

Florida Public Utilities Commission.

August 7, 1964.

John T. Bond and John P. Bond, both of Miami, for the applicant.

Thomas T. Cobb, Daytona Beach, for City of Daytona Beach, protestant.

Wayne K. Ramsay, Jacksonville, for Greyhound Lines, Inc., protestant.

Chairman EDWIN L. MASON and Commissioner JERRY W. CARTER participated in the disposition of this matter.

BY THE COMMISSION.

Pursuant to statutory notice the commission by its duly designated examiner, William L. Weeks, held a public hearing on the above application on May 30, 1963 and March 23, 1964 at the Halifax Law Center, Holly Hill, Florida.

The examiner's report and recommended order were duly served on all the parties. Exceptions to the recommended order were filed with the commission. Subsequently, the City of Daytona Beach withdrew its exceptions and Greyhound Lines, Inc. waived its right to oral argument. The entire record herein, including the application, the testimony adduced at the public hearings and the exceptions to the recommended order have all been examined by the full commission. After due consideration, the commission now enters its own order in this cause.

By this application, Transit Company of Daytona Beach, a Florida corporation, seeks authority to operate as a motor common carrier in the transportation of passengers over regular schedules and over regular routes, to, from and between all points and places in the following cities, including the suburban areas adjacent to or adjoining said cities — Edgewater, New Smyrna Beach, Port Orange, South Daytona, Daytona Beach, Holly Hill, Ormond Beach, Daytona Beach Shores, and the unincorporated areas commonly known as the North and South Peninsulas.

This application was supported by forty-two public witnesses who primarily reside or have business offices in the area covered by this application. The testimony generally concerned the inadequacy of the bus system as presently operated by the city of

Daytona Beach and as to their need and use of a bus system. Many of the witnesses testified as to the inadequacy of the equipment as operated by the city of Daytona Beach. They complained that the equipment was old and run down and that it would frequently break down while operating. Another common complaint of the public witnesses was that the bus system, as operated by the city, did not maintain an adequate time schedule of operation in that buses were often late or ahead of schedules and this caused prolonged waiting periods particularly where the time schedules are set upon a two-hour basis. Another complaint was that the existing bus service stopped operating over many routes at too early an hour.

Some of the public witnesses reside in the New Smyrna Beach-Edgewater area and their testimony generally concerned the fact that there is at present no urban type of bus system from New Smyrna Beach to the Daytona Beach area. At the present time they have to rely upon private cars, taxis, neighbors and on the Greyhound bus system for travel to and from the city of Daytona Beach. There was no real complaint by these witnesses as to the services actually performed by Greyhound, but they did testify that this service is not frequent enough to meet their traveling needs and that the routes operated over by Greyhound are not close enough to their residential areas so that they may readily avail themselves of Greyhound's services. All of these witnesses testified they have need of a bus service as proposed by the applicant and that if a bus system were inaugurated with service from the New Smyrna Beach-Edgewater area to the city of Daytona Beach, they would utilize same. In addition, it is to be noted that the city council of the city of Edgewater and the city commission of the city of New Smyrna Beach filed resolutions in this cause in support of the application.

The majority of witnesses who testified are senior citizens who desire and need a dependable bus service that will provide adequate equipment and schedules which will meet their business, medical, shopping and recreational needs. It is apparent from the record in this cause that such a service is not presently available. All of the public witnesses who appeared in behalf of the applicant testified that if a new bus system were instituted with adequate equipment and schedules, they would utilize same and, further, that they would utilize it more frequently than they do the present bus system.

Two policy witnesses appeared in behalf of the applicant, the first of which was Jack Kronick, the vice president. Mr. Kronick's testimony generally concerned the proposed routes of the applicant, together with its time schedules and schedule of fares. Mr. Kronick's testimony generally concerned the fact that the

applicant's service, although basically the same as the service provided by the city bus system, would be extended to areas not covered by the city's schedules. Also appearing in behalf of the applicant was William H. Goodfriend, the secretary and treasurer. Mr. Goodfriend's testimony generally concerned his experience and background in the bus business. He testified that he presently operates two private common carriers in the state of Florida. One is the Transit Company of the Palm Beaches and the other is Turfway Lines, Inc. Both of these are bus passenger service. Mr. Goodfriend further testified as to the financial ability of the applicant to adequately service the area sought by this application. He testified that he has eighteen buses available for immediate use and that if this application were granted, he would order six new diesel-powered, air-conditioned buses with piped-in music.

Only two witnesses appeared on behalf of the protestant city of Daytona Beach. They were city manager Hickey and Amos M. Deatherage, Daytona Beach city personnel director and the operating head of the protestant bus system. Mr. Deatherage's testimony indicated that the city maintains twenty-seven buses, twenty of which are seventeen years old or older; and of the newer buses, none would be considered as late-model buses. It further appeared from Mr. Deatherage's testimony that the city bus company in 1963 lost $48,543 for a six-month period. His testimony also developed the fact that the present bus company, as operated by the city of Daytona Beach, had not made a profit since 1947 and 1948 and that the loss each year had fluctuated. The other witness, Norman Hickey, the city manager, testified briefly that he considered the city bus system a reasonable success despite the losses sustained during the 1962-1963 fiscal year. Mr. Hickey also indicated that the city of Daytona Beach had sent out invitations for offers so as to determine whether or not the municipality wanted to continue to operate the bus system or to lease or sell it to a private concern.

Appearing on behalf of protestant Greyhound Lines, Inc., was E. L. Minton, general manager. Mr. Minton's testimony generally concerned Greyhound's opposition to the applicant's scheduled run between New Smyrna Beach and Daytona Beach. Mr. Minton testified that the inauguration of such a service could have a material effect upon his company's business as certain passenger revenue would be subject to diversion by the applicant.

It is apparent from the record that most of the operations of the protestant Greyhound Lines, Inc. do not generally conflict with the operations as proposed by the applicant. It is also readily apparent that the protesting city of Daytona Beach has been in the past and is today unable to meet the needs of the traveling

public in all of the cities sought by this application. Obviously, a complete and up-to-date, modern bus system cannot be provided or is not planned to be provided by the protestant City of Daytona Beach in the immediate future. The traveling public should not be required to accept or utilize a bus service that does not meet their need when there is available to it a modern, up-to-date system which will adequately meet their needs. The pole star which guides this commission is and always has been the public convenience and necessity.

After due consideration of the entire record, the commission finds — (1) That public convenience and necessity require the granting of this application so as to authorize the applicant to operate as a common carrier of passengers over designated regular routes and on regular schedules. (2) That the protesting carriers serving the area covered by this application are not providing the service and facilities reasonably required by the traveling public. (3) That the granting of this application may have some adverse effect upon existing transportation facilities within the subject territory but it would, by the same token, have a salutary effect upon transportation as a whole within said territory. (4) That the applicant is qualified financially and otherwise to render the proposed transportation service. (5) That the public interest will best be served by the granting of this application.

In consideration of the premises, it is therefore ordered that the application of Transit Company of Daytona Beach, 4200 Georgia Avenue, West Palm Beach, Florida, be and the same is hereby granted and that said applicant be issued certificate of public convenience and necessity no. 863 authorizing it to operate as a motor common carrier of passengers to, from and between all points and places in the cities of Edgewater, New Smyrna Beach, Port Orange, South Daytona, Daytona Beach, Holly Hill, Ormond Beach, Daytona Beach Shores, including the suburban areas adjacent to or adjoining said cities, and the unincorporated areas commonly known as the North and South Peninsulas, over regular schedules and over the following regular routes —

*Route No. 1, Serving: Daytona Beach - South Daytona - Port Orange - Allandale - New Smyrna Beach - Edgewater.* Starting from: Beach and Orange; West on Orange; South on Ridgewood (U. S. #1); proceeding through South Daytona, Port Orange, Allandale as far as New Smyrna Beach; East on Wayne; South on Riverside Dr.; East on N. Causeway to Beach; South on S. Atlantic Blvd. to Elementary School; turning at School proceeding North on S. Atlantic Blvd.; West on 2nd over S. Causeway; continuing South on Riverside Drive to Town of Edgewater, terminating at Boston Road; return reversing route.

*Route No. 2, Serving: Daytona Beach - Holly Hill - Ormond Beach - Ellinor Village.* Starting from: Beach and Orange; North on Beach; West on Second; North on Ridgewood (U.S. #1); East on Granada; South on Atlantic; terminating at Shopping Center, Boylston Avenue; return reversing route.

*Route No. 3, Serving Daytona Beach - Ortona - Ormond Beach - Ormond-by-the-Sea.* Starting from: Orange and Beach; North on Beach; West on Volusia (U.S. #92) serving Airport; General Electric and Auto Speedway, Dog Track and Jai-Alai in seasons; North on Lake Shore Drive to Halifax Hospital; East on Redding; North on Heineman; East on Hillcrest, North on Berkshire; East on Mason; South on White; East on Madison; South on Ridgewood; East on Volusia continuing over Broadway Bridge; North on Peninsula; West on University; North on Halifax; East on Boylston; North on Atlantic proceeding thru Ormond Beach and Ormond-by-the-Sea; terminating at San Jose Drive; return reversing route.

*Route No. 4, Serving: Daytona Beach - Daytona Beach Shores and Wilbur-by-the-Sea.* Starting from: Second and Garden; North on Garden; West on Cypress; South on Keech; East on Second, which completes Loop around Haven Houses; East on Second; South on Ridgewood; East on Volusia; North on Beach; East over Broadway Bridge; South on Peninsula; East on Phoenix, South on Atlantic thru Daytona Beach Shores; terminating at Toronita Avenue in Wilbur-by-the-Sea; return trip reversing route.

*Route No. 5, Serving: Daytona Beach - Ormond Beach - Ormond-by-the-Sea.* Starting from: Freemont and Campbell; East on Freemont; North on Marion; West on Cedar; North on Campbell; East on 2nd Avenue; South on Ridgewood; East on Live Oak; North on Beach; East over Broadway Bridge; North on Grandview; East on Sea Breeze; North on Atlantic (A1A); West on Granada; North on John Anderson Highway; East on Roberta Road; South on Atlantic; West on Ocean Shore Drive; return reverse route.

*Route No. 6, Serving: South Daytona - Daytona Beach and Holly Hill.* Starting from: Big Tree Road in South Daytona; North on Ridgewood; East on Freemont; North on Palmetto; East on Loomis; North on Beach; North on Riverside Drive; West on 3rd Street; North on Center Street; East on Flomich (16th Street); South on Riverside Drive; South on Beach; continuing on above route to South Daytona.

It is further ordered that the applicant comply with this commission's rules and regulations governing insurance, tariffs, registration of equipment, rates and schedules, and make and file proper mileage tax reports with this commission.